IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CHICAGO TITLE INSURANCE     *
COMPANY,     *
    *
      Plaintiff,     *
    * CIVIL ACTION NO. 23-00032-KD-B
vs.     *
    *
EDWARD A. SCHRADER, *et al.*,     *
    *
      Defendants.     *

## ORDER

This action is before the Court on Defendants Edward A. Schrader and Brooke Schrader's Motion to Dismiss, Alternatively, Motion for Summary Judgment, and Motion to Stay (Doc. 5). Upon consideration of all matters presented, the undersigned finds that Defendants' motion is due to be **GRANTED in part** and **DENIED in part**.

I.    **BACKGROUND**

Plaintiff Chicago Title Insurance Company (herein "Plaintiff" or "Chicago Title") seeks a declaratory judgment against Defendants Edward A. Schrader and Brooke Schrader (herein "Defendants" or the "Schraders") to determine the parties' rights, duties, and obligations under a title insurance policy issued to the Schraders after a property purchase. (Docs. 1, 9). Plaintiff's amended complaint is the operative pleading before the

Court.[1]  (Doc. 9).  In the amended complaint, Plaintiff asks this Court to declare that the Schraders' refusal to allow Chicago Title to pursue efforts to cure the alleged invalidity of their deed terminates Chicago Title's obligations under the policy.  (Id. at 7).  Plaintiff also seeks a judgment declaring that the Schraders' rescission of their purchase of the subject property invalidates the title insurance policy or otherwise relieves Chicago Title of any and all obligations under the policy.  (Id. at 7-8).

According to the amended complaint, Katherine and Jody Crane (herein the "Cranes") owned the real property and improvements located at 6213 Brandy Run Road North, Mobile, Alabama 36608.  (Id. at 2).  In or around July 2018, the Schraders entered into a contract with the Cranes, wherein the Schraders agreed to buy the property from the Cranes.  (Id. at 3).  Surety Land Title, Inc.

---

[1] Plaintiff filed its amended complaint for declaratory judgment (Doc. 9) less than twenty-one days after service of Defendants' motion to dismiss.  (Doc. 5).  In their brief in support of the motion to dismiss, Defendants highlighted several clerical errors in the original complaint, including its omission of several pages of the subject insurance policy, and they attached a full copy of the policy to their motion.  (See Doc. 5-1; Doc. 6 at 1-2).  According to Plaintiff, the amended complaint corrects a few typographical errors and replaces an incomplete copy of the title insurance policy with a complete copy of the policy. (Doc. 10 at 1 n.1).  Plaintiff notes that the substance of the amended complaint does not differ from the original complaint; therefore, although the motion to dismiss was filed prior to the amended complaint, Plaintiff responded to the motion to dismiss as if it had been directed to the amended complaint.  (Id.).  The undersigned finds that the amended complaint is proper under Federal Rule of Civil Procedure 15(a)(1)(B) and is the operative pleading before the Court.

("Surety") issued a commitment for title insurance to the Schraders in preparation for the closing of the property purchase.  (Id.). This commitment obligated Chicago Title to issue to the Schraders a title insurance policy upon the occurrence of certain conditions, including that the Schraders obtain a deed conveying title to the property to them, and that the Schraders pay the Cranes full consideration for the purchase of the property.  (Id.).  The Schraders purchased the property from the Cranes and received a deed to the property on August 9, 2018.  (Id.).  Surety then issued the title insurance policy, which is underwritten by Chicago Title, with the Schraders as the insureds.  (Id.).

On June 16, 2020, the Schraders filed an action in the Circuit Court of Mobile County, Alabama, seeking, among other relief, rescission of their purchase of the property from the Cranes.[2] (Id.).  The Schraders originally sought rescission on the ground that the Cranes fraudulently induced the Schraders into buying the property by misrepresenting or fraudulently suppressing the presence of termites and related damage to the house on the property.  (Id. at 3-4).  The Schraders later amended their state court complaint to add as an additional ground for rescission that

---

[2] The rescission action is styled Edward A. Schrader et al. v. Katherine B. Crane et al., No. 02-CV-2020-901302.  (Doc. 9 at 3). Chicago Title is not a party to the rescission action.  (Id. at 4).  According to Alacourt – Alabama's electronic court monitoring system – the case is scheduled for trial in March 2024.

the deed is void.  (Id. at 4).  Per the Schraders, their assertion
that the deed is void is based on Jody Crane's deposition testimony
that he did not personally sign the warranty deed but authorized
his wife to sign it for him.  (Id.).

   In a notice dated August 31, 2022, the Schraders notified the
Cranes and others that the Schraders demanded rescission and
damages based on their assertions that Jody Crane's signature on
the deed was forged and the notarization accompanying the signature
was fraudulent.  (Id.).  The Schraders also advised Chicago Title
of their efforts to rescind the purchase from the Cranes, to have
the deed declared void, and to otherwise invalidate their title to
the property.  (Id.). The Schraders further advised Chicago Title
that they are not presently making a claim under the title
insurance policy but that, if they are successful in their efforts
to rescind the purchase and the Cranes do not or cannot satisfy a
judgment entered against them, the Schraders will then pursue a
claim against Chicago Title under the title insurance policy.
(Id.).

   In Chicago Title's operative complaint, it asserts that the
Schraders' title insurance policy does not provide coverage for
defects in the property or any improvements thereon, such as
termite or moisture damage.  (Id.).  Chicago Title further contends
that while the title policy does provide coverage for certain title
defects, the coverage is subject to specific conditions that confer

4

and impose various rights and duties on Chicago Title and the Schraders. (Id. at 4-5). In particular, Chicago Title asserts that the subject title policy imposes a duty on the Schraders to cooperate with Chicago Title and gives Chicago Title a right to cure any claimed title defects. (Id. at 5).

According to Chicago Title, the Cranes have offered to provide to the Schraders a new warranty deed properly signed by both of the Cranes. (Id. at 5-6). However, the Schraders have refused to accept a corrected warranty deed and will not permit Chicago Title to pursue efforts to cure the alleged defect in their title arising from the improper execution of the deed. (Id. at 6). Per Chicago Title, the Schraders' refusal to allow Chicago Title to cure the alleged title defect violates the Schraders' duty to cooperate under the insurance policy and results in a termination of Chicago Title's obligations under the title insurance policy. (Id.). The Schraders, on the other hand, contend that while they are reserving their right to pursue a claim against Chicago Title at a later point, Chicago Title has a duty to cooperate with their efforts to seek rescission of the purchase and invalidate their title or claim to the property. (Id.).

Presently pending before the Court is the Schraders' motion to dismiss. (Doc. 5). The Schraders contend that Chicago Title is seeking to require them to forfeit their lawful right to seek recovery for their injuries and damages in the pending state court

action in contravention of applicable legal authority, and that this Court should stay, dismiss, or abstain from hearing Chicago Title's claim for a declaration that the Schraders' rescission of their property purchase invalidates the policy because the state court rescission action is still ongoing. (Id. at 1-2). In their supporting brief, the Schraders argue that Chicago Title's first prayer for relief - that this Court declare that the Schraders' refusal to allow Chicago Title to pursue efforts to cure the alleged invalidity of the deed terminates Chicago Title's obligations under the policy - is not based on any legal authority. (Doc. 6 at 2-3). The Schraders also argue that Chicago Title's second prayer for relief - that the Schraders' rescission of the purchase of the property invalidates the policy or otherwise relieves Chicago Title of all obligations under the policy – is based on an alleged rescission that has not occurred and is thus contingent on the outcome of the state court action. (Id. at 3).

The Schraders dispute that their duty to cooperate under the title insurance policy legally requires them to "subjugate" their own interests to the interests of Chicago Title. (Id. at 7). The Schraders further contend that they only amended their state court complaint to assert "fraud related to the void Warranty Deed as an additional ground for rescission" after Jody Crane admitted that his wife, a licensed real estate salesperson, forged his signature on the deed and had her forgery notarized. (Id. at 5-6). The

Schraders assert that since their fraud allegation involved title to the property, they placed Chicago Title on notice of their discovery as required under the title insurance policy. (Id. at 6). The Schraders also notified Chicago Title that any liability arising under the title policy and relating to the "void" deed will be subject to a final judgment (and satisfaction thereof) in the Schraders' pending rescission action. (Id. at 6-7). The Schraders further advised that because any liability under the title insurance policy was contingent upon the outcome of their rescission claim, Chicago Title should not take any action "which could in any manner adversely affect, prejudice or interfere with the Schraders' prosecution of the claims in their [state court action]; necessarily including their claims for rescission." (Id. at 7). The Schraders argue that rather than accept the "tolling agreement" they offered in order to "assuage possible claims of prejudice . . . from a timing standpoint," Chicago Title "elected to collude with the parties who committed the fraud [i.e., the Cranes] and demanded that . . . the Schraders release these culpable parties from liability[.]" (Id.).

In Chicago Title's response to the Schraders' motion, it argues that a declaratory judgment by this Court is appropriate given that a genuine dispute exists as to the obligations of both parties under the title policy. (Doc. 10 at 3-4). Chicago Title further argues that the Schraders' motion to stay this case pending

7

their state court action is inappropriate as Chicago Title is not a party to the state court action and the coverage dispute is not among the issues presented in the state court action. (Id. at 4).

In their reply, the Schraders aver that they rejected Chicago Title's demand that they accept a corrected deed from the Cranes because (a) acceptance would or could interfere and/or prejudice the prosecution of their claims in the state court action; and (b) under the title insurance policy, their duty to cooperate does not give Chicago Title the authority to mandate that the Schraders forego their affirmative claims against third parties. (Doc. 11 at 6).

## II.  **STANDARDS OF REVIEW**

### A.  **Declaratory Judgment Act.**

Plaintiff brought this action pursuant to the Declaratory Judgment Act, which provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The Declaratory Judgment Act is properly "understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).  The Supreme Court has described the Declaratory Judgment

Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." <u>Id.</u> at 287 (quotation omitted). As the Eleventh Circuit has observed, the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." <u>Ameritas Variable Life Ins. Co. v. Roach</u>, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam). "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." <u>Wilton</u>, 515 U.S. at 288.

**B.   Rule 12(b)(1).**

The Schraders "contest the issue of the existence of a present case or controversy" as it relates to Chicago Title's request for a declaration that their rescission of the purchase of the property invalidates the policy or otherwise terminates Chicago Title's obligations under the policy. (Doc. 11 at 4). Whether an action presents a case or controversy is a basic question of subject matter jurisdiction. <u>See</u> <u>Provident Life & Acc. Ins. Co. v.</u> <u>Transamerica-Occidental Life Ins. Co.</u>, 850 F.2d 1489, 1491 (11th Cir. 1988).

Although the Schraders do not explicitly state that they are bringing a motion to dismiss under Federal Rule of Civil Procedure

12(b)(1), a dismissal on ripeness grounds properly falls under the umbrella of a Rule 12(b)(1) dismissal for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); Reahard v. Lee County, 30 F.3d 1412, 1415 (11th Cir. 1994) (stating that the issue of ripeness goes to whether a district court has subject matter jurisdiction); Penn-Star Ins. Co. v. Swords, 2017 U.S. Dist. LEXIS 153751, at *4, 2017 WL 4180889, at *2 (N.D. Ala. Sept. 21, 2017) ("A motion to dismiss the complaint based on ripeness implicates Federal Rule of Civil Procedure 12(b)(1)."); see also Elend v. Basham, 471 F.3d 1199, 1204-05 (11th Cir. 2006) (noting that the question of "ripeness originate[s] from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies").

"Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks." Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)).  A "facial attack" is based solely on the allegations in the complaint and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction.  Id.  Further, for the purposes of the court's analysis, the allegations in the plaintiff's complaint are taken as true.  Id.  On the other hand, a "factual attack" challenges "subject matter jurisdiction in fact, irrespective of the pleadings."  Id.  "The burden of proof on a

Rule 12(b)(1) motion is on the party averring jurisdiction."
Atwell v. KW Plastics, 213 F. Supp. 2d 1294, 1295 (M.D. Ala. 2002)
(citing Thomson v. Gaskill, 315 U.S. 442, 446 (1942)).

    **C.    Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion
to dismiss a complaint on the ground that the plaintiff has failed
to state a claim upon which relief can be granted. Fed. R. Civ.
P. 12(b)(6). "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Id. This necessarily requires that a
plaintiff include factual allegations for each essential element
of his claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir.
2010). A complaint does not need detailed factual allegations,
but it "requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do."
Twombly, 550 U.S. at 555.

When evaluating a motion to dismiss under Rule 12(b)(6), a
court "must accept the factual allegations in the complaint as
true and construe them in the light most favorable to the

plaintiff." <u>Almanza v. United Airlines, Inc.</u>, 851 F.3d 1060, 1066 (11th Cir. 2017).  That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011).  "On a Rule 12(b)(6) motion to dismiss, the moving party bears the burden to show that the complaint should be dismissed." <u>Sprint Sols., Inc. v. Fils-Amie</u>, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quotation and alteration omitted).

**III.** **<u>DISCUSSION</u>**

> **A.   Defendants' motion to dismiss Plaintiff's declaratory judgment claim as pled in paragraph 43(c)(i) of the amended complaint is due to be denied because Chicago Title has stated a plausible claim for relief.**

The Schraders contend that dismissal or summary judgment is appropriate on Chicago Title's claim for a declaration that the Schraders' refusal to allow Chicago Title to pursue efforts to cure the allegedly invalid deed terminates Chicago Title's obligations under the insurance policy.[3]  (Doc. 5 at 1; Doc. 6 at

---

[3] The Schraders have attached to their motion four letters from their counsel to Chicago Title.  (Doc. 5-2).  These letters were not included as exhibits to Chicago Title's amended complaint. (<u>See</u> Doc. 9).  Generally, when a court considers matters outside the pleadings on a motion under Rule 12(b)(6), the motion to dismiss is converted into a motion for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d).  However, a court may consider evidence outside the pleadings on a motion to dismiss without converting the motion into one for summary judgment if the complaint effectively incorporates the extrinsic evidence by reference, meaning that the evidence is central to the plaintiff's claim and its authenticity is not challenged. <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th

8-10).  According to the Schraders, the undisputed facts show that Chicago Title's action lacks legal authority, given that "curing" the defective deed would prejudice the Schraders' rescission claims.  (Doc. 6 at 8-10; Doc. 11 at 2, 4-5).  In response, Chicago Title argues that under the plain terms of the title policy, its obligations with respect to the purportedly invalid title have terminated as a result of the Schraders' failure to cooperate in its efforts to cure the alleged defect.  (Doc. 10 at 18).

Although the Schraders do not explicitly state that they are moving to dismiss under Rule 12(b)(6), their arguments appear to attack the legal sufficiency of the claim pled in paragraph 43(c)(i) of the amended complaint.  See Balbuena v. McHugh, 2015 U.S. Dist. LEXIS 143454, at *8, 2015 WL 6433258, at *3 (S.D. Ala. Sept. 24, 2015) (noting that "a Rule 12(b)(6) motion questions the legal sufficiency of a complaint"), report and recommendation adopted, 2015 U.S. Dist. LEXIS 143453, 2015 WL 6394514 (S.D. Ala. Oct. 22, 2015).  For the reasons set forth below, the undersigned finds that Chicago Title's factual allegations and the terms contained in the subject title insurance policy plausibly support Chicago Title's claim.

---

Cir. 2002); see also Allen v. USAA Cas. Ins. Co., 790 F.3d 1274, 1278 (11th Cir. 2015).  Here, the letters from the Schraders' counsel have not been effectively incorporated by reference into the operative complaint.  And, the undersigned finds that the instant motion can be resolved without considering these additional materials.

An insurance company like Chicago Title seeking determination of its liabilities under an insurance contract can utilize the Declaratory Judgment Act. State Farm Mut. Auto. Ins. Co. v. Bates, 542 F. Supp. 807, 817 (N.D. Ga. 1982) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241 (1937)). "Insurance policies are contracts, and 'like other cont[r]acts, [they are] governed by the general rules of contracts.'" James River Ins. Co. v. Ultratec Special Effects Inc, 22 F.4th 1246, 1254 (11th Cir. 2022) (quoting Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So. 2d 687, 691 (Ala. 2001)).

For starters, section 15(b) of the title policy conditions provides that "[a]ny claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy." (Doc. 9 at 32). Because any claim against Chicago Title is limited to the policy, its provisions control as to the parties' rights and obligations. See M & F Bank v. First Am. Title Ins. Co., 144 So. 3d 222, 229 (Ala. 2013). Additionally, section 15(a) notes that "[i]n interpreting any provision of this policy, this policy shall be construed as a whole." (Doc. 9 at 32).

As noted, the Schraders assert that the fraudulent actions of the Cranes fall within the policy's covered risks. (See Doc. 6 at 8; see also Doc. 9 at 28). Chicago Title counters that the title policy as a whole supports its position that by refusing to allow

it to pursue efforts to cure the alleged title defect, the Schraders have violated their duty to cooperate under the policy.

Section 5(b) of the policy conditions states, in relevant part:

> The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured.

(Doc. 9 at 30).

And, section 7(b)(i) gives Chicago Title the option "[t]o pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy." (Id. at 31). Section 7(b) further provides that if Chicago Title exercises its option to settle with other parties or with the insured, then Chicago Title's obligations to the insured under the policy for the claimed loss or damage shall terminate. (Id.).

Additionally, section 9(a) of the conditions gives Chicago Title the ability to remove a defect in title to avoid liability with respect to that defect, as follows:

> If the Company establishes the Title, or removes the alleged defect, . . . or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation . . . , it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(Id.).

Both parties refer to the insured's duty to cooperate, located in section 6(a) of the policy conditions, which states in full:

> In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose.  Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witness, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, or any other matter as insured.  If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(Id. at 30-31).

Based on the provisions discussed above, the undersigned finds that Chicago Title's interpretation of its obligations given the Schraders' actions is plausibly supported by the policy.  Read together, the referenced policy sections arguably give Chicago Title the right to do any act to establish title, such as pursuing efforts to correct the allegedly defective deed issued by the Cranes or filing an action.  It stands to reason that procuring a corrected deed would likely allow Chicago Title to perform its obligation to cure the allegedly defective title and eliminate the

loss or damage caused by the very risk that the policy insures against.  The policy also arguably requires the Schraders to cooperate with Chicago Title in establishing title, and by refusing to accept a new warranty deed from the Cranes and prohibiting other efforts to cure the claimed title defect, the Schraders are arguably failing to cooperate in Chicago Title's efforts to cure. As asserted by Chicago Title, the Schraders' refusal to accept a new deed or allow other curing efforts is arguably preventing Chicago Title from exercising its right to do any act that "may be necessary or desirable to establish the Title[.]" (See id. at 31). Based on the above-referenced policy provisions, the undersigned finds that Chicago Title has plausibly alleged that the Schraders have breached their duty to cooperate under the policy, and have prejudiced Chicago Title by creating uncertainty and preventing it from curing the alleged title defect.

The Schraders rely primarily on Mid-Continent Cas. Co. v. Petroleum Sols., Inc., 917 F.3d 352 (5th Cir. 2019), to argue that an insurance policy's cooperation clause does not apply to an insured's affirmative claims against a third party, and that their duty to cooperate therefore does not require them to "subjugate" their best interests (i.e., pursuing the rescission action as they see fit) to the interests of Chicago Title.  (See Doc. 6 at 9-10). In Mid-Continent Cas. Co., a general liability insurer urged its insured to dismiss with prejudice a third-party strict liability

claim against a manufacturer in exchange for the dismissal of the manufacturer's counterclaim against the insured, meaning the insured's strict liability claim would be permanently waived and it would possibly be left without recourse against the manufacturer. 917 F.3d at 355.  The district court ruled that the policy's cooperation clause applied to the insured's third-party claim against the manufacturer, but that genuine issues of fact existed about whether the insured had complied with the cooperation clause. Id.  At trial, the jury found that the insured had waived reliance on the cooperation clause.  Id. at 356.

On appeal, the insurer argued that the insured breached the policy's cooperation clause by refusing to dismiss its third-party claim against the manufacturer.  Id.  The Fifth Circuit found that the insurer offered "no law to support its novel and dubious concept that the Cooperation Clause applies to an insured's affirmative claims against a third party, and the direction of the law in this area is against such a conclusion."  Id.  The Fifth Circuit also refused to endorse the district court's holding that the policy's cooperation clause applied to the insured's third-party claim against the manufacturer.  Id.  The appellate court noted that because the insured prevailed on the issue at trial, it was not necessary to address the question further.  Id.

It is noteworthy that Mid-Continent Cas. Co. involved general liability insurance, where the insurer had an interest in the

（

outcome of the litigation because it had assumed the insured's defense and was potentially obligated to indemnify the insured for a judgment entered in favor of the third party.  See id.; see also Lupu v. Loan City, LLC, 903 F.3d 382, 394 (3d Cir. 2018) (noting that "title insurance is 'fundamentally different' from general liability insurance" and that "'title issues are discrete, [and] they can be bifurcated fairly easily from related claims'") (quoting GMAC Mortg., LLC v. First Am. Title Ins. Co., 985 N.E.2d 823, 831 (Mass. 2013)).

In this case, Chicago Title is not involved in the rescission action against the Cranes, and it does not appear that Chicago Title is asserting that its right to cure the alleged title defect supersedes the Schraders' right to pursue their claims against the Cranes and others relating to the subject property.  See Van Hoof v. Van Hoof, 997 So. 2d 278, 297-98 (Ala. 2007) (a tortfeasor cannot avoid a claim for fraud by subsequent conduct).  Rather, Chicago Title is arguing that the policy imposes consequences should the Schraders elect to prevent it from exercising its right to cure an alleged title defect while also reserving their right to later pursue a claim against Chicago Title based on the very title defect that they are preventing from being cured.  Despite bearing the burden of persuasion on their Rule 12(b)(6) motion, the Schraders have offered no legal authority establishing an insured's right to prevent a title insurer from pursuing efforts

to cure an allegedly invalid title under circumstances analogous to those in this case.  See <u>Sprint Sols., Inc.</u>, 44 F. Supp. 3d at 1228 ("Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal.").  Accordingly, Defendants' motion to dismiss Plaintiff's claim seeking a declaration "that the Schraders' refusal to allow Chicago Title to pursue efforts to cure the alleged invalidity of the Deed terminates Chicago Title's obligations under the Policy" is due to be denied.

**B.**  **Defendants' motion to stay or dismiss Plaintiff's declaratory judgment claim as pled in paragraph 43(c)(ii) of the amended complaint is due to be granted because Plaintiff's prayer for relief presents an issue that is not ripe.**

The Schraders also move the Court "to stay, dismiss or abstain from hearing" Chicago Title's claim for a declaration "that the Schrader's [sic] rescission of the purchase of the Property invalidates the Policy or otherwise relieves Chicago Title of any and all obligations under the Policy" on the ground that this claim is not ripe for adjudication.  (Doc. 5 at 2; Doc. 6 at 10-11).  According to the Schraders, Chicago Title's claim that a rescission of the property purchase will invalidate the insurance policy "will not 'ripen' until there is an entry of a Final Judgment in the underlying Civil Action (and the Satisfaction thereof); necessarily including the Schraders' claims for rescission."  (Doc.

6 at 10).  In response, Chicago Title argues that the Schraders'
present refusal to allow curative efforts and the effect of that
refusal presents an actual controversy that is ripe for judicial
determination.  (Doc. 10 at 15-16).

The undersigned finds that Chicago Title's second claim lacks
"a substantial controversy, between parties having adverse legal
interests, of sufficient immediacy and reality to warrant the
issuance of a declaratory judgment.'" Am. Ins. Co. v. Evercare
Co., 430 F. App'x 795, 798 (11th Cir. 2011) (per curiam) (quoting
GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567
(11th Cir. 1995)).  As pled in the amended complaint, the
controversy between Chicago Title and the Schraders involves two
discrete issues: (i) whether the Schraders' refusal to allow
Chicago Title to pursue curative efforts regarding the allegedly
invalid deed terminates Chicago Title's obligations under the
policy, and (ii) whether the Schraders' potential rescission of
the property purchase invalidates the title insurance policy or
otherwise terminates Chicago Title's obligations under the policy.
(See Doc. 9 at 7-8).

While Chicago Title's first prayer for relief presents a
controversy that is sufficiently real and immediate to warrant the
issuance of a declaratory judgment, its second claim amounts to
nothing more than a request for this Court to opine on the parties'
rights and obligations under a hypothetical state of facts.

Although the Schraders' briefs are far from a model of clarity, it appears to the Court that their ripeness argument only relates to Chicago Title's second prayer of relief, which on its face deals squarely with Chicago Title's potential duty to indemnify the Schraders in the event their rescission action is successful.  The Schraders do not seek indemnification from Chicago Title at present, but they have notified Chicago Title of their intent to pursue a claim under the policy if they obtain a judgment for rescission and the Cranes do not or cannot satisfy a judgment entered against them.  (Id. at 4).

In its response, Chicago Title fails to directly address the fact that the Schraders' ripeness argument relates only to its claim for a declaration of the parties' rights and obligations in the event the Schraders' state court rescission action is successful.  (See Doc. 10 at 15-16).  Chicago Title argues that nothing in the policy obligates it to wait for a judgment determining the title to be defective before pursuing its right to cure.  However, the Schraders do not argue – and the Court does not find - that Chicago Title's claim for a declaration "that the Schraders' refusal to allow Chicago Title to pursue efforts to cure the alleged invalidity of the Deed terminates Chicago Title's obligations under the Policy" is unripe.  Rather, the Schraders argue that Chicago Title's claim as pled in paragraph 43(c)(ii) of the amended complaint is not ripe because it seeks a declaration

on Chicago Title's duty to indemnify the Schraders in the hypothetical potential event that the Schraders' claim for rescission based on the allegedly fraudulent deed is successful in state court.

The Court notes that section 8 of the policy states that "[t]his policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy." (Doc. 9 at 31). Chicago Title's second prayer for relief, which asks this Court to find that rescission, if successful, relieves Chicago Title of its obligations under the policy, appears to be an attempt to escape potential liability under the policy based on a future event. As such, the Schraders' ripeness argument is consistent with those cases in which courts routinely hold that declaratory judgment claims regarding an insurer's duty to indemnify are premature while the state court action is ongoing. See, e.g., Pa. Nat'l Mut. Cas. Ins. Co. v. Hethcoat & Davis, Inc., 339 F. Supp. 3d 1248, 1257 (N.D. Ala. 2017) ("[A]n insurer's request for declaratory relief on the issue of its duty to indemnify is not ripe for adjudication unless and until the underlying action is resolved."); Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) ("Because an insurer's duty to indemnify is dependent on the outcome of a case,

any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.").

Chicago Title counters that the instant action is distinguishable from cases concerning a duty to indemnify under a general liability policy because the controversy here concerns the rights and policy provisions surrounding the insurer's right to take action to cure title and the effect of the insureds' prevention of curative efforts. (See Doc. 10 at 15). Chicago Title's assertion, as it relates to its first prayer for relief as pled in paragraph 43(c)(i), is well taken. However, the prayer for relief in paragraph 43(c)(ii) is premised on Chicago Title's hypothetical duty to indemnify the Schraders in the event their rescission action is successful. A claim that "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," is not ripe for adjudication. Texas v. United States, 523 U.S. 296, 300 (1988) (quotation omitted). Thus, Chicago Title's request for declaratory relief in paragraph 43(c)(ii) of the amended complaint is premature because it effectively seeks a declaration as to whether Chicago Title has a duty to indemnify the Schraders for the contemplated loss associated with their pending rescission action.

The undersigned notes that in the common situation where an "action includes a ripe request for a declaration as to the duty to defend, the Court has consistently stayed an accompanying,

unripe request for a declaration as to the duty to indemnify." Accident Ins. Co. v. Greg Kennedy Builder, Inc., 159 F. Supp. 3d 1285, 1293 (S.D. Ala. 2016). This case similarly involves a ripe request for a declaration paired with an unripe request that is contingent upon the success of the Schraders' rescission claim in state court. The parties' briefs do not specifically address whether Chicago Title's claim as pled in paragraph 43(c)(ii) should be stayed or dismissed if found to be unripe. Given the foregoing, the Court will follow its usual approach and stay consideration of Plaintiff's unripe second claim, while proceeding to determine Plaintiff's ripe request for a declaration as pled in paragraph 43(c)(i).[4]

## IV.   CONCLUSION

For the reasons discussed above, it is ordered that Defendants' motion (Doc. 5) be **GRANTED in part** and **DENIED in part**, as follows:

---

[4] Given this procedural posture, the Court need not address the Schraders' argument that the Court should abstain from hearing Chicago Title's declaratory judgment claim as pled in paragraph 43(c)(ii) of the amended complaint based on the Wilton-Brillhart abstention doctrine. See Am. Nat'l Prop. & Cas. Co. v. Gulf Coast Aerial, LLC, 2019 U.S. Dist. LEXIS 148531, at *16-17, 2019 WL 4131107, at *7 (S.D. Ala. Aug. 29, 2019) ("Because the Court can clearly abstain from hearing American National's duty-to-indemnify claim under prudential ripeness considerations, . . . the undersigned finds it unnecessary to address whether the Court should alternatively abstain from hearing that claim under Brillhart-Wilton considerations."), report and recommendation adopted, 2019 U.S. Dist. LEXIS 164866, 2019 WL 4725160 (S.D. Ala. Sept. 26, 2019).

(i) Defendants' motion to dismiss Plaintiff's first prayer for relief is **DENIED** because Plaintiff has plausibly alleged that its obligations have terminated under the terms of the title insurance policy; and

(ii) Defendants' motion to stay Plaintiff's second prayer for relief based on ripeness grounds is **GRANTED** because the underlying state court action seeking rescission is still ongoing.

DONE and ORDERED this 20th day of September 2023.

 **s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICTJUDGE**